**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CYD Internacional S.A.** | : | **CIVIL ACTION** |
| **Santiago, Chile** | : | |
| and | : | |
| **Exportadora Aqua Santa S.A.** | : | |
| **Santiago, Chile** | : | |
| and | : | |
| **Commercial Greenvic S.A.** | : | |
| **Santiago, Chile** | : | |
| and | : | |
| **Exportadora Geofrut Ltda.** | : | |
| **Santiago, Chile** | : | |
| and | : | |
| **Exportadora Los Lirios S.A.** | : | |
| **Santiago, Chile** | : | |
| and | : | |
| **Exportadora Subsole S.A.** | : | |
| **Santiago, Chile** | : | |
| and | : | |
| **Frutera San Fernando S.A.** | : | |
| **Santiago, Chile** | : | |
| and | : | |
| **Dayka & Hackett, LLC** | : | |
| **Reedley, California** | : | |
| | : | |
| | : | |
| vs. | : | |
| **M/V BRAZILIAN REEFER** | : | **NO.** |
| **her engines, boilers, bunkers,** | : | |
| **tackles, gear, winches, appurtenances,** | : | |
| **etc.,** *in rem.* | : | |
| and | : | |
| **LCL SWEDEN AB** | : | |
| **P.O. Box 4315** | : | |
| **SE-102 67 Stockholm, Sweden** | : | |
| and | : | |
| **NYK COOL AB** | : | |
| **P.O. Box 4315** | : | |
| **SE-102 67 Stockholm, Sweden** | : | |
| and | : | |
| **Chartworld Shipping Corp.** | : | |
| **2, Zisimopoulou Street & Poseidonos Avenue** | : | |
| **Glyfada, 166 74 Athens** | : | |
| **Greece** | : | |
| and | : | |
| **Pearl Maritime, Inc.** | : | |
| **2, Zisimopoulou Street & Poseidonos Avenue** | : | |
| **Glyfada, 166 74 Athens** | : | |
| **Greece** | : | |

## COMPLAINT IN ADMIRALTY *IN REM AND IN PERSONAM*
### Parties

1.  CYD Internacional S.A. ("CYD") is a corporation with an office and place of business located in Chile.

2.  Exportadora Aqua Santa S.A. ("Aqua Santa") is a corporation with an office and place of business located in Chile.

3.  Commercial Greenvic S.A. ("Greenvic") is a corporation with an office and place of business located in Chile.

4.  Exportadora Geofrut Ltda. ("Geofrut") is a corporation with an office and place of business located in Chile.

5.  Exportadora Los Lirios S.A. ("Los Lirios") is a corporation with an office and place of business located in Chile.

6.  Exportadora Subsole S.A. ("Subsole") is a corporation with an office and place of business located in Chile.

7.  Frutera San Fernando ("Frusan") is a corporation with an office and place of business located in Chile.

8.  Dayka & Hackett, LLC is a corporation with an office and place of business in Reedley, California.

9   Plaintiffs are shippers and/or receivers/consignees of fruit who regularly import their products on board ocean vessels arriving in the ports of the United States.

10.  Defendant, BRAZILIAN REEFER, is a vessel operated as a common carrier of goods in ocean transportation and is now or will be during the pendency of this proceeding within the Eastern District of Pennsylvania.

11.     At all material times, Chartworld Shipping Corp. ("Chartworld"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V BRAZILIAN REEFER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, Chartworld also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which Chartworld was to deliver the goods in the same good order at a designated place.

12.     At all material times, Pearl Maritime, Inc. (hereinafter "Pearl"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V BRAZILIAN REEFER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, Pearl also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which Pearl was to deliver the goods in the same good order at a designated place.

13.     At all material times, NYK Cool AB ("NYK"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V BRAZILIAN REEFER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, NYK also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which NYK was to deliver the goods in the same good order at a designated place.

14.     At all material times, LCL Sweden AB ("LCL"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of

- 3 -

business at the address set forth in the caption, and·was the owner, disponent owner, charterer, and/or operator of the M/V BRAZILIAN REEFER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, LCL also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which LCL was to deliver the goods in the same good order at a designated place.

15.    At all times material hereto, Defendants were and are now engaged in the business of common carriage and/or private carriage of merchandise by water for hire and owned, operated, managed, chartered, possessed and/or controlled various vessels, including the M/V BRAZILIAN REEFER, as common and/or private carriers of merchandise for hire.

16.    The vessel owned and/or operated by the above defendants has used the ports of the Commonwealth of Pennsylvania discharged and loaded cargo therein, been supplied services and handled therein and is subject to service of process under the applicable rules of law in admiralty practice and the statutes of the Commonwealth of Pennsylvania.

17.    Plaintiffs were the shippers, consignees or owners of the cargo described more further below, and bring this action on their own behalf and as agents and trustees on behalf of and for the interests of all parties who may be or become interested in said shipment, and cargo as their respective interests may ultimately appear, and plaintiff is duly entitled to maintain this action.

### Jurisdiction and Venue

18.    Plaintiffs  by and through their attorneys, Dugan, Brinkmann, Maginnis and Pace, hereby bring this suit against the defendants under the provisions of 28 U.S.C. §1333, as this is an admiralty and maritime claim within the meaning of Rule 9(h) and the supplemental Admiralty Rules of the Federal Rules of Civil Procedure.  In addition, jurisdiction is invoked pursuant to 28

U.S.C. §1377 as this is an action arising under an Act of Congress regulating commerce, specifically, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §1300 *et seq.* and the Harder Act of 1893, 46 U.S.C. §§190-196.

19.    Venue lies within the Eastern District of Pennsylvania under the provisions of 28 U.S.C. §1391.

## COUNT I

20.    In or about March of 2009, in Valparaiso, Chile, numerous cases of fresh fruit consigned to CYD were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

21.    In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1534910074, NKLCVL1534910075, NKLCVL1534910076, NKLCVL1534910010, NKLCVL1534910011, NKLCVL1534910077, NKLCVL1534910078 and NKLCVL1534910079 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

22.    Thereafter, various goods were delivered by the above named defendants to CYD, whereupon it was discovered that CYD's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

23.    The aforesaid damage and loss of CYD's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

24.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, CYD has sustained damage and loss in an amount in excess of Seventy-Two Thousand Dollars ($72,000.00).

25.     The aforesaid damage and/or loss of CYD's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

a.      failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

b.      failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

c.      failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

d.      failing to use proper care under the circumstances;

e.      failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

f.      failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

g.      other and further particulars which will be shown at the time of trial.

26.     By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of CYD's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Seventy-Two Thousand Dollars ($72,000.00).

27.     Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by CYD.

28.     All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, CYD prays that:

1.     Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.     If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Seventy-Two Thousand Dollars ($72,000.00).

3.     Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.     Judgment be entered on behalf of CYD and against the defendants plus interest and costs of this action.

5.     CYD have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT II

29.     Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 28 set forth above.

30.     In or about March of 2009, in Valparaiso, Chile, 48,736 cases of fresh fruit consigned to Aqua Santa were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

31.     In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL15349100 89, 91 and 93 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

32.     Thereafter, various goods were delivered by the above named defendants to Aqua Santa, whereupon it was discovered that Aqua Santa's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

33.     The aforesaid damage and loss of Aqua Santa's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

34.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Aqua Santa has sustained damage and loss in an amount in excess of One Hundred and Nineteen Thousand Dollars ($119,000.00).

35.     The aforesaid damage and/or loss of Aqua Santa's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

a.      failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

b.      failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

c.      failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

d.      failing to use proper care under the circumstances;

e.      failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

f.      failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

g.      other and further particulars which will be shown at the time of trial.

36.      By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Aqua Santa's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of One Hundred and Nineteen Thousand Dollars ($119,000.00).

37.      Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Aqua Santa.

38.      All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Aqua Santa prays that:

1.      Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.      If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any

vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of One Hundred and Nineteen Thousand Dollars ($119,000.00).

3.     Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.     Judgment be entered on behalf of Aqua Santa and against the defendants plus interest and costs of this action.

5.     Aqua Santa have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT III

39.     Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 38 set forth above.

40.     In or about March of 2009, in Valparaiso, Chile, 2,168 cases of fresh peaches and 6,104 cases of nectarines consigned to Greenvic were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

41.     In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1534910048 and NKLCVL1534910049 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

42.     Thereafter, various goods were delivered by the above named defendants to Greenvic, whereupon it was discovered that Greenvic's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

43.     The aforesaid damage and loss of Greenvic's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

44.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Greenvic has sustained damage and loss in an amount in excess of Sixty-Two Thousand Dollars ($62,000.00).

45.     The aforesaid damage and/or loss of Greenvic's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

      a.      failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

      b.      failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

      c.      failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

      d.      failing to use proper care under the circumstances;

      e.      failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

f.      failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

g.      other and further particulars which will be shown at the time of trial.

46.      By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Greenvic's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Sixty-Two Thousand Dollars ($62,000.00).

47.      Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Greenvic.

48.      All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Greenvic prays that:

1.      Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.      If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Sixty-Two Thousand Dollars ($62,000.00).

3.      Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.      Judgment be entered on behalf of Greenvic and against the defendants plus interest and costs of this action.

5.      Greenvic have such other and further relief in the premises and in law and justice as it may be entitled to receive.

### COUNT IV

49.      Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 48 set forth above.

50.      In or about March of 2009, in Valparaiso, Chile, 9,120 cases of grapes, 3,904 cases of fresh plums, 480 cases of fresh nectarines, 7,080 cases of fresh peaches and 32,832 cases of fresh grapes, consigned to Geofrut were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

51.      In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1534910108, NKLCVL1534910007, NKLCVL1534910014, NKLCVL1534910105, NKLCVL1534910106 and NKLCVL1534910107 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

52.      Thereafter, various goods were delivered by the above named defendants to Geofrut, whereupon it was discovered that Geofrut's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

53.      The aforesaid damage and loss of Geofrut's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

54.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Geofrut has sustained damage and loss in an amount in excess of One Hundred and Six Thousand Dollars ($106,000.00).

55.     The aforesaid damage and/or loss of Geofrut's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

    a.    failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

    b.    failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

    c.    failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

    d.    failing to use proper care under the circumstances;

    e.    failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

    f.    failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

    g.    other and further particulars which will be shown at the time of trial.

56.     By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Geofrut's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of One Hundred and Six Thousand Dollars ($106,000.00).

57.     Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Geofrut.

58.     All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Geofrut prays that:

1.     Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.     If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of One Hundred and Six Thousand Dollars ($106,000.00).

3.     Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.     Judgment be entered on behalf of Geofrut and against the defendants plus interest and costs of this action.

5.     Geofrut have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT V

59.     In or about March of 2009, in Valparaiso, Chile, numerous cases of fresh fruit consigned to Los Lirios were delivered in good order and condition aboard the M/V BRAZILIAN

REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

60.     In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1534910094 and NKLCVL1534910095 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

61.     Thereafter, various goods were delivered by the above named defendants to Los Lirios, whereupon it was discovered that Los Lirios' goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

62.     The aforesaid damage and loss of Los Lirios' cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

63.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Los Lirios has sustained damage and loss in an amount in excess of Twenty-Six Thousand Dollars ($26,000.00).

64.     The aforesaid damage and/or loss of Los Lirios' cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

> a.     failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

b.      failing to exercise due and proper care in the handling, stowing, carrying and

discharge of said cargo;

c.      failing to safeguard properly said cargo and to prevent damage to it while in

their custody and care;

d.      failing to use proper care under the circumstances;

e.      failing to operate the refrigeration equipment properly in that the vessel

experienced mechanical problems during the voyage;

f.      failing to avoid engine problems during the voyage resulting in improper

refrigeration which caused damage to the cargo; and

g.      other and further particulars which will be shown at the time of trial.

65.     By reason of all of the above defendants' negligence and lack of due care and

the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and

discharge of Los Lirios' goods and the lack of appropriate stowage aboard the said vessel has

suffered damages and loss in excess of Twenty-Six Thousand Dollars ($26,000.00).

66.     Notice of claim and claim have been filed with the defendants, but they have

failed and refused to pay all or any part of the loss which has been sustained by Los Lirios.

67.     All of the singular facts and matters set forth herein are true and within the

jurisdiction of this Court.

WHEREFORE, Los Lirios prays that:

1.      Process in the due form of law, according to the practice of this Court issue

against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.      If the defendants cannot be found within this District, then all goods, chattels

and equipment in the possession of any person, partnership or corporation owned by them or any

vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Twenty-Six Thousand Dollars ($26,000.00).

3.     Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.     Judgment be entered on behalf of Los Lirios and against the defendants plus interest and costs of this action.

5.     Los Lirios have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT VI

68.     In or about March of 2009, in Valparaiso, Chile, 3,372 cases of fresh grapes consigned to Subsole were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

69.     In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bill of lading numbered NKLCVL1534910066 was issued acknowledging receipt on the vessel of the said shipment in good order and condition.

70.     Thereafter, various goods were delivered by the above named defendants to Subsole, whereupon it was discovered that Subsole's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

71.     The aforesaid damage and loss of Subsole's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

72.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Subsole has sustained damage and loss in an amount in excess of Eleven Thousand Dollars ($11,000.00).

73.     The aforesaid damage and/or loss of Subsole's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

     a.     failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

     b.     failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

     c.     failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

     d.     failing to use proper care under the circumstances;

     e.     failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

     f.     failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

     g.     other and further particulars which will be shown at the time of trial.

74.     By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Subsole's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Eleven Thousand Dollars ($11,000.00).

75.     Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Subsole.

76.     All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Subsole prays that:

1.     Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.     If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Eleven Thousand Dollars ($11,000.00).

3.     Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.     Judgment be entered on behalf of Subsole and against the defendants plus interest and costs of this action.

5.     Subsole have such other and further relief in the premises and in law and justice as it may be entitled to receive.

- 20 -

## COUNT VII

77.     In or about March of 2009, in Valparaiso, Chile, 3,840 cases of fresh grapes consigned to Frusan were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

78.     In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bill of lading numbered NKLCVL1534910084 was issued acknowledging receipt on the vessel of the said shipment in good order and condition.

79.     Thereafter, various goods were delivered by the above named defendants to Frusan, whereupon it was discovered that Frusan's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

80.     The aforesaid damage and loss of Frusan's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

81.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Frusan has sustained damage and loss in an amount in excess of Fifteen Thousand Dollars ($15,000.00).

82.    The aforesaid damage and/or loss of Frusan's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

a.    failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

b.    failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

c.    failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

d.    failing to use proper care under the circumstances;

e.    failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

f.    failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

g.    other and further particulars which will be shown at the time of trial.

83.    By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Frusan's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Fifteen Thousand Dollars ($15,000.00).

84.    Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Frusan.

85.    All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Frusan prays that:

1.      Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.      If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Fifteen Thousand Dollars ($15,000.00).

3.      Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4.      Judgment be entered on behalf of Frusan and against the defendants plus interest and costs of this action.

5.      Frusan have such other and further relief in the premises and in law and justice as it may be entitled to receive.

## COUNT VIII

86.     In or about March of 2009, in Valparaiso, Chile, numerous cases of fresh fruit consigned to Dayka were delivered in good order and condition aboard the M/V BRAZILIAN REEFER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

87.     In or about March of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVL1534910059, LAVRVL1534910035,

NKLCVL153491013 and LAVRVL1534910034 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

88.     Thereafter, various goods were delivered by the above named defendants to Dayka, whereupon it was discovered that Dayka's goods were not in like good order and condition as when received aboard the M/V BRAZILIAN REEFER, but were instead damaged, deteriorated in value and unfit for sale or use.

89.     The aforesaid damage and loss of Dayka's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

90.     By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Dayka has sustained damage and loss in an amount in excess of One Hundred and Forty Thousand Dollars ($140,000.00).

91.     The aforesaid damage and/or loss of Dayka's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

      a.      failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

      b.      failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

      c.      failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

      d.      failing to use proper care under the circumstances;

e.      failing to operate the refrigeration equipment properly in that the vessel experienced mechanical problems during the voyage;

f.      failing to avoid engine problems during the voyage resulting in improper refrigeration which caused damage to the cargo; and

g.      other and further particulars which will be shown at the time of trial.

92.     By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Dayka's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of One Hundred and Forty Thousand Dollars ($140,000.00).

93.     Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Dayka.

94.     All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Dayka prays that:

1.      Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2.      If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of One Hundred and Forty Thousand Dollars ($140,000.00).

3.      Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V BRAZILIAN REEFER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said

vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

       4.     Judgment be entered on behalf of Dayka and against the defendants plus interest and costs of this action.

       5.     Dayka have such other and further relief in the premises and in law and justice as it may be entitled to receive.

DUGAN, BRINKMANN, MAGINNIS AND PACE

BY:          EM871
            Eugene J. Maginnis, Jr., Esquire
            1880 John F. Kennedy Boulevard
            Suite 1400
            Philadelphia, PA 19103
            (215) 563-3500
            ATTORNEY FOR PLAINTIFFS

Dated: March 24, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CYD Internacional S.A., et al.                :        Civil Action
                                              :
            v.                                :        No.
                                              :
M/V BRAZILIAN REEFER, et al.                  :

DISCLOSURE STATEMENT FORM

Please check one box:

■        The nongovernmental corporate party, _____ Plaintiffs _____
         , in the above listed civil action does not have any parent corporation and publicly
         held corporation that owns 10% or more of its stock.

□        The nongovernmental corporate party, _____,
         in the above listed civil action has the following parent corporation(s) and publicly
         held corporation(s) that owns 10% or more of its stock:

_____
_____
_____
_____


March 24, 2010                                         EM871
      Date                                            Signature


                        Counsel for: _____ Plaintiffs _____


**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

        (a) WHO MUST FILE: NONGOVERNMENTAL CORPORATE PARTY. A nongovernmental
corporate party to an action or proceeding in a district court must file two copies of a
statement that identifies any parent corporation and any publicly held corporation that owns
10% or more of its stock or states that there is no such corporation.

        (b) TIME FOR FILING; SUPPLEMENTAL FILING. A party must:

        (1)      file the Rule 7.1(a) statement with its first appearance, pleading, petition,
                 motion, response, or other request addressed to the court, and

        (2)      promptly file a supplemental statement upon any change in the
                 information that the statement requires.